## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

STATE NATIONAL INSURANCE
COMPANY, INC.,

      Plaintiff,

v.                                CASE NO. 8:14-cv-00524-EAK-EAJ

HIGHLAND HOLDINGS, INC.,
d/b/a HIGHLAND HOMES, INC.,
ROBERT J. ADAMS, and
HOME DESIGN SERVICES, INC.,

      Defendants.

_____/

### ORDER

      This matter comes before the Court pursuant to State National Insurance Company's

Motion for Final Summary Judgment filed on February 10, 2015 (Doc. 30) and Defendants'

Response in Opposition to Plaintiff's Motion for Motion for Summary Judgment filed on March

2, 2015 (Doc. 35). For the reasons that follow, the court denies State National's Motion for Final

Summary Judgment.

1

## BACKGROUND

The following facts are accepted as true for purposes of resolving the instant motion. Home Design Services, Inc. (Home Design) is a nationally recognized designer of pre-drawn home plans that are sold through catalogues, magazines, and on the internet throughout the United States. On September 23, 2013, Home Design commenced an action against Highland Holdings, Inc. (Highland Homes) in this Middle District, Case Number 8:13-cv-02448-EAK-MAP, which included allegations of copyright infringement in violation of 17 U.S.C. § 501 (Underlying Lawsuit). (Doc. 30, pg. 2; Doc 1, pg. 3). According to the allegations in the Underlying Lawsuit, Highland Homes and Robert Adams infringed upon three of Home Design's copyrights. Home Design alleges that Highland Homes and Adams have contributory and/or vicarious liability for those claimed copyright infringements. (Doc. 30, pg. 2).

State National Insurance Company Inc. (State National) issued Policy No. 09 0480000159 7 00 to Highland Homes, for the period extending from July 1, 2011 to July 1, 2012, and the renewal thereof under Policy No. 09 0480000159 7 01 for the period July 1, 2012 to July 1, 2013. Id. at 3. Provision 1(b) of the Insuring Agreement included within the Policy stated, "[T]his insurance applies to 'personal and advertising injury' caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period." Id. Provision 2(c) of the Policy was an Exclusion, denying coverage for, "'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." Id. at 4–5. The architectural designs Home Design alleges were copyrighted were published by Highland Homes in or before the year 2010, prior to the beginning of the coverage period established by the Policy. Id. at 16.

Internet Archive, a corporation, is a nonparty to this suit;however the corporation offers a service called The Wayback Machine that plays an important role in understanding the facts of the Underlying Lawsuit. Internet Archive preserves Internet website publications at a specific date and time through a service identified as the Wayback Machine. Id. at 6. The Wayback Machine compiles archived data using software programs known as crawlers, which surf the Web and automatically store copies of web files, preserving these files as they exist at the point of time of capture. The Wayback Machine keeps track of the specific date and time that the website publication was captured and records the date and time in a uniform resource locater (URL). Id. The assigned URL appears as follows: http://web.archive.org/web/[Year in yyyy][Month in mm][Day in dd][Time code in hh:mm:ss]/[Archived URL]. The numeric string concluding the URL, http://web.archive.org/web/20100707060928, confirms the Wayback Machine's recording of the website publication bearing that identifier, during the twenty-eighth second of the ninth minute of the sixth hour of July 7th in the year 2010. Id.

According to Internet Archive, in the year 2010, Highland Homes published, on or through a website, the architectural floor plans and illustrations of the three separate architectural designs, alleged to be copyrighted designs belonging to Home Design. Home Design alleges such designs were published on Highland Homes' website, www.highlandhomes.org. Id. at 6–7.

On March 26, 2013, Highland Homes received Home Design's pre-suit demand letter informing Highland Homes that it was being examined for potential copyright infringement. (Doc. 35, pg. 2). Highland Homes immediately informed its insurance provider, State National, about the letter. Id. In early April, David Cribb, the State National adjustor assigned to the claim contacted Highland Homes. Id. According to Highland Homes, Mr. Cribb assured Highland Homes that State National would protect its interests in the Underlying Lawsuit. Id. Over the

next several months, Highland Homes tried to get into contact with Mr. Cribb regarding the status of the claim, however Mr. Cribb was unreachable. Id.

On September 23, 2013, Home Design commenced the Underlying Lawsuit in this Middle District including allegations of copyright infringement in violation of 17 U.S.C. § 501. (Doc. 30, pg. 2; Doc. 35, pg. 2). Apparently, Home Design attempted to resolve this matter before September 23, 2013 but a lack of response from Mr. Cribb made such task difficult. (Doc. 35, pg. 2). On January 13, 2014, State National sent Highland Homes a reservation of rights. Id. State National informed Highland Homes that there were issues as to whether coverage applied under the Policy and identified several areas where potential coverage questions were found to exists, including "Material Published Prior to Policy Period". (Ex. 3-A, pg. 3). State National reserved its rights to withdraw its defense and indemnification of the insured if the subject claim was found to fall outside the coverage afforded by the Policy. (Ex. 3-A, pg. 6). At this same time, State National informed Highland Homes that it was taking the position that State National did not provide coverage for the alleged damages sought in the Underlying Lawsuit. (Joel Adams Affidavit, pg. 2–3).

State National now seeks summary and declaratory judgment against Highland Homes because according to the Policy, the relevant insurance State National provided to Highland Homes excludes from its coverage any losses arising out of the oral or written publication of material whose first publication took place before the beginning of the initial policy period. The relevant insurance coverage issued by State National includes the period extending from July 1, 2011 to July 1, 2013. The relevant publication material being examined for potential copyright infringement includes the three alleged Home Design copyrights that Highland Homes published on www.highlandhomes.com. It is Home Design's contention that Highland Homes published

4

Home Design's copyrighted material prior to July 1, 2011 meaning Highland Homes published

the material prior to the inception of the Policy. Provision 1(b) of the Insuring Agreement within

the Policy denies coverage for damaging materials published prior to the inception date of the

policy. (Doc. 30, pg. 3).

Pursuant to Florida law, an insurance contract is construed according to the plain

language of the policy. Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.

2005). Where the language of the policy is clear and unambiguous on its face, the policy must be

given full effect. Key Custom Homes, Inc. v. Mid-Continent Cas. Co., 450 F. Supp. 2d 1311,

1316 (M.D. Fla. 2006) (quoting State Farm Fire & Cas. Co. v Metro. Dade County, 639 So.2d

63, 65 (Fla. Dist. Ct. App. 1994)). The plain language of the policy unambiguously excludes

personal and advertising injury arising out of oral or written publication of material whose first

publication took place before the beginning of the policy period. (Doc. 30, pg. 4–5).

State National alleges Highland Homes first published Home Design's copyrighted

material on or before June 13, 2010 and July 7, 2010, prior to the beginning of State National's

period of coverage, July 1, 2011. Id. at 16. State National contends it has no duty to defend or

indemnify Highland Homes in the Underlying Lawsuit due to the Exclusion included in the

Policy. Highland Homes' response to State National's motion for summary judgment seeks use

of the theory of estoppel to expand coverage beyond the Exclusion included in the agreement.

(Doc. 35, pg. 1). Highland Homes points to State National's failure to address estoppel in its

Motion for Summary Judgment, even though Highland Homes included estoppel in the

affirmative defenses section of its Answer. (Doc 35, pg. 1; Doc 6, pg. 3). Highland Homes

alleges estoppel raises a genuine issue of material fact that precludes the Court from granting

summary judgment at this particular time.

This order addresses whether the affirmative defense of estoppel can extend the coverage period to include the events occurring outside the coverage period specified in the Policy.

## LEGAL STANDARD

Summary judgment is appropriate if the pleadings, discovery, disclosure materials on file, and any affidavits demonstrate there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

The appropriate substantive law will guide the determination of which facts are material and which facts are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See Anderson, 477 U.S. at 248. However, if the evidence is merely colorable...or is not significantly probative...summary judgment may be granted. Id. at 249–250.

## ANALYSIS

State National's Motion includes adequate detail supporting its refusal to indemnify and defend Highland Homes in the Underlying Lawsuit. The dates alleged by State National indicate Highland Homes published Home Design's material prior to the inception of the Policy. First publication of Home Design's alleged copyrighted material occurred on or before June 13, 2010 and July 7, 2010, prior to the beginning of State National's Policy period of coverage, July 1, 2011. The Policy included an Exclusion provision denying coverage for "'Personal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (Doc. 30, pg. 4–5). The facts alleged in respective parties' filings indicate Highland Homes published the infringing materials several months before the Policy began providing coverage. A straightforward reading of the facts suggest such Exclusion denies coverage for potential damages that arise out of the Underlying Lawsuit and therefore State National would have no duty to defend or indemnify Highland Homes.

An insurer has no duty to indemnify when an unambiguous exclusion applies. See Estate of Tinervin v. Nationwide Mut. Ins. Co., 23 So.3d 1232, 1236 (Fla. Dist. Ct. App. 2009). When the plain language of an exclusion applies, an insurer has no duty to indemnify an insured. See Perrine Food Retailers, Inc. v. Odyssey Re (London) Ltd., 721 So.2d 402, 404 (Fla. Dist. Ct. App. 1998). State National alleges the materials found on Highland Homes' website, and made accessible through the Wayback Machine, were published prior to the inception of the Policy. Therefore, State National contends it has no duty to indemnify Highland Homes for damages that may arise out of the Underlying Lawsuit pursuant to the unambiguous and plain language of the corresponding Exclusion in the Policy.

State National makes an equally compelling argument regarding its duty to defend. Under Florida law, a duty to defend arises "'where the complaint alleges a state of facts within the coverage of the insurance policy." Vector Prods., Inc. v. Hartford Fire Ins. Co., 397 F.3d 1316, 1320 (11th Cir. 2005). It appears Highland Homes has not asserted a state of facts that qualify for coverage under the terms of the Policy. The facts alleged fall within an Exclusion provision of the Policy.

Highland Homes does not contest the above discussion but instead, presents estoppel as an affirmative defense. Therefore, the issue in this case is whether an insurer, when the policy excludes coverage, can be estopped from denying coverage.

## I.      Prejudice

The general rule says insurance coverage cannot be extended by waiver or estoppel where no coverage originally existed. Packing v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560 (Fla. Dist. Ct. App. 1972). A straightforward application of this general rule would support State National's refusal to defend and indemnify. Any contrary result would require using estoppel to extend coverage to a period of time where no coverage originally existed which is exactly what the general rule prohibits. However, Florida courts have recognized an exception to the general rule that estops insurance companies from raising a coverage defense when the insurance company assumes the defense of an action with knowledge of the lack of coverage. When an insurance company assumes the defense of an action, with knowledge, actual or presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage. Cigarette Racing Team, Inc. v. Parliament Ins. Co., 395 So.2d 1238, 1239–40. (Fla Dist. Ct. App. 1981). Whether the exception to the rule applies depends upon whether the insurer assuming the defense prejudiced the insured. Doe on Behalf of

8

Doe v. Allstate Ins. Co., 653 So.2d 371 (Fla. 1995). Highland Homes requests this court apply the exception in this case.

Fla. Mun. Ins. Trust v. Vill. of Golf, 850 So.2d 544 (Fla. Dist. Ct. App. 2003) provides guidance to the current issue. The claimant notified the insured party of its claim, and the insured immediately informed the insurer. Fla. Mun. Ins. Trust, 850 So.2d at 545. Within a few days, the insurer retained counsel and a field adjuster to investigate. Id. at 545–46. Three months later, the adjustor visited the site where the alleged damage took place, and the investigator took photographs. Id. About ten months after, the claimant sent a letter to the insured claiming $1,600,000.00 in damages, and three months after that, the party filed suit. Id. The insured promptly forwarded the letter and the complaint to its insurer. Id. Two weeks later, the insurer notified the insured that there was no coverage because of the pollution exclusion contained in the comprehensive liability policy. Id. The insured retained its own counsel and settled for $237,500.00. Id.

In a subsequent suit between the insured and the insurer, the jury did not find coverage under the policy, but did find estoppel, awarding the insured the amount of the settlement, as well as attorney's fees and litigation costs incurred in defending the claim. Id. The insured relied on the theory of estoppel which this court first recognized in Florida in Cigarette Racing Team, Inc., 395 So.2d at 1239–40.

> The issue on appeal is whether this case is controlled by the general rule that insurance coverage cannot be extended by waiver or estoppel or the exception to the rule that, when an insurance company assumes the defense of an action with knowledge of the lack of coverage, it may be estopped to raise the coverage defense. Admittedly, the general rule is that the doctrines of waiver and estoppel will not operate to create coverage in an insurance policy where none originally existed. Six L's Packing v. Fla. Farm Bureau Mut. Ins. Co., 268 So.2d 560 (Fla. Dist. Ct. App. 1972), *cert. discharged,* 276 So.2d 37 (Fla. 1973). There is an exception to the rule, however, which provides that "when an insurance company assumes the defense of an action, with knowledge, actual or

9

presumed, of facts which would have permitted it to deny coverage, it may be estopped from subsequently raising the defense of non-coverage." City of Carter Lake v. Aetna Casualty & Surety Co., 604 F.2d 1052, 1059 (8th Cir. 1979). *Accord*, Pac. Indem. Co. v. Acel Delivery Serv., Inc., 485 F.2d 1169 (5th Cir.1973), *cert. denied*, 415 U.S. 921, 94 S.Ct. 1422, 39 L.Ed.2d 476 (1974); Fidelity & Casualty Co. of N.Y. v. Riley, 380 F.2d 153 (5th Cir. 1967); Ins. Co. of N. Am. v. Nat'l Steel Serv. Ctr., Inc., 391 F. Supp. 512 (N.D. W. Va. 1975), *aff'd*, 529 F.2d 515 (4th Cir. 1976). *See also:* 7C J. Appleman, Insurance Law and Practice, s 4692 (1979).

Cigarette Racing Team was approved by the Florida Supreme Court in Doe, 653 So.2d at

373–74. The Court observed in Doe:

> [T]he holding in Cigarette Racing Team properly takes into account the import of an insurer's obligation to defend within a policy of liability insurance. This obligation has long been recognized by this Court. In fulfilling its promissory obligation to defend, the insurer employs counsel for the insured, performs the pretrial investigation, and controls the insured's defense after a suit is filed on a claim. The insurer also makes decisions as to when and when not to offer or accept settlement of the claim.... This obligation amounts to a fiduciary duty requiring the exercise of good faith....
>
> Thus, when the insurer undertakes the defense of a claim on behalf of one claiming to be an insured, we have recognized substantial duties on the part of both the insurer and the insured. If an insurer erroneously begins to carry out these duties, and the insured, as required, relies upon the insurer to the insured's detriment, then the insurer should not be able to deny the coverage which it earlier acknowledged. However, we clearly state that the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured. It is the fact that the insured has been prejudiced which estops the insurer from denying the indemnity obligation of the insurance policy. (citations omitted). Doe, 653 So.2d at 373–74.

The Response to Plaintiff's Motion for Summary Judgment alleges State National began

to carry out a defense on behalf of Highland Homes when Mr. Cribb contacted Highland Homes

on behalf of State National, and advised Highland Homes to refrain from discussing the matter

with Home Design's counsel and further assured Highland Homes that State National would

protect them. (Doc. 35, pg. 2). The submitted affidavit from Joel Adams asserts Mr. Cribb

advised Highland Homes that he would attempt to settle the claim with Home Design thereby

giving Highland Homes the impression from late May 2013 to September 2013 that State

National was negotiating the claim on behalf of Highland Homes. A reasonable jury could

conclude that the nature of the communication between Mr. Cribb and Highland Homes, as set forth in the affidavit, made it reasonable for Highland Homes to infer that State National was carrying out a defense on Highland Home's behalf.

The controlling issue here is whether Highland Homes was prejudiced by State National's action and inaction during the Underlying Lawsuit. In order for coverage by estoppel to apply, the insured must demonstrate that the insurer's assumption of the insured's defense has prejudiced the insured. Doe, 653 So.2d at 374. Highland Homes has the burden to show it was prejudiced by the actions and inactions of State National.

In Cigarette Racing Team, an insurance company delayed sixteen months before it notified its policy holder that it would not assume the duty to indemnify and it would no longer defend the insured in the lawsuit. 395 So.2d at 1239. In an effort to expand coverage, the policy holder filed an affidavit specifying instances of prejudice that took place as a result of the insurer's representation. Id. at 1240. An allegation of prejudice generally requires a factual determination. Id. Therefore, the Court of Appeals overruled the trial court's summary judgment and remanded the issue for factual determination. Id.

Highland Homes alleges a series of events similar to Cigarette Racing Team. From the facts accepted as true here, it is apparent that upon learning of the claim against Highland Homes, State National gave Highland Homes the impression that it would mount a defense in the Underlying Lawsuit. Accordingly, Highland Homes relied on State National's representation from late May to September 2013. Highland Homes believes it would have settled the claim with Home Design had State National made it known on the front end that it would be seeking a reservation of rights. According to Highland Homes, this type of action typically settles and,

therefore, could have been settled in 2013 or at least early 2014 if State National had properly defended.

Highland Homes alleges that as a result of State National's actions and inactions, the defense underwent prejudice in the Underlying Lawsuit. State National had enough information to deny coverage immediately after being contacted by Home Design, but failed to do so. As a result, Highland Homes was not able to properly protect itself in the Underlying Lawsuit, causing Highland Homes more exposure to the copyright infringement claim than necessary. A reasonable jury could find prejudice under these facts. Therefore, the motion for summary judgment will be DENIED.

## II.    § 627.426(2), Florida Statutes

Highland Homes also raises an issue as to State National's failure to comply with Section 627.426(2), Florida Statutes which is a notice statute requiring insurance companies provide notice of refusal to defend. (Doc. 35, pg. 6). Section 627.426(2) gives insurers thirty (30) days to provide the insured with notice of the insurance company's intention to refuse coverage. FLA. STAT. § 627.426(2). Highland Homes alleges State National waited until January 2014 before informing Highland Homes of the reservation of rights. (Doc. 35, pg. 2). Highland Homes informed State National of the complaint in September 2013. Id. Such delay exceeds the thirty (30) day notice period required by § 627.426(2).

An insurer's failure to comply with the requirement of Florida Statute, § 627.426(2) will not bar an insurer from disclaiming liability where the coverage sought is expressly excluded or otherwise unavailable under the policy or under existing law. AIU Ins. Co. v. Block Marina Inv., Inc., 544 So.2d 998, 1000 (Fla. 1989). The Court further stated "[W]e do not believe that the

12

legislature intended, by the enactment of section 627.426(2), to give an insured coverage which is expressly excluded from the policy . . . simply because an insurer fails to comply with the terms of the aforementioned statute." Id. at 999. Highland Homes alleges State National failed to comply with the notice period required by § 627.426(2)(a) but instead, waited several months before doing anything. Further, Highland Homes claims State National waited four months before informing Highland Homes that it would be defending under a reservation of rights.

"Coverage defense" within the meaning of § 627.426(2), that requires liability insurer to follow specific procedures in order to deny coverage based on particular coverage defense, did not include complete lack of coverage for claim that was made before effective date of claims made policy period. Country Manors Ass'n. Inc. v. Master Antenna Sys., Inc., 534 So.2d 1187, 1194 (Fla. Dist. Ct. App. 1988). Highland Homes makes an assertion that State National's failure to strictly comply with § 627.426(2), Florida Statutes, precludes State National from asserting the coverage defense that coverage is specifically excluded by the terms of the policy. However, the term "coverage defense" has been construed to mean a defense to coverage that otherwise exists or could exist under the law. Country Manors Ass'n, 534 So.2d at 1195. An insurer should not assert a coverage defense where there was no coverage in the first place. U.S. Fidelity & Guar. Co. v. Am. Fire & Indem. Co., 511 So.2d 624, 625 (Fla. Dist. Ct. App. 1987). Therefore, it follows that coverage for damages that result from publication prior to July 2011 cannot be created by waiver and estoppel because at no point did such coverage exist for this particular period. The legislature did not intend, by § 627.426(2), to create coverage under liability insurance policy that never provided that coverage. Id.

An insurance company is not prohibited from denying coverage in connection with loss, coverage for which was excluded under comprehensive liability policy, notwithstanding its

13

failure to timely notify insured of refusal to defend. <u>AIU</u>, 544 So.2d 998. It follows that State National should not be barred from refusing coverage due to its failure to comply with § 627.426(2) so that defense is not found to preclude summary judgment. Accordingly, it is

**ORDERED** that the motion for summary judgment (Doc. 30) is **denied** based on the finding that there are material facts to be determined by the trier-of-fact as to estoppel.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 1st day of June, 2015.


ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All parties and counsel of record